IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ZACKORY H. RINGER,<br><br>    Plaintiff,<br><br>vs.<br><br>NEBRASKA, KANSAS, & COLORADO RAILWAY, L.L.C., OMNITRAX HOLDINGS COMBINED, INC., and OMNITRAX, INC.<br><br>    Defendants. | 4:20-CV-3056<br><br>MEMORANDUM AND ORDER |

  The plaintiff, Zackory Ringer, alleges a retaliation claim pursuant to the whistleblower provision of the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20109, and an injury claim pursuant to the Federal Employers Liability Act (FELA) regarding the defendants' negligence in exposing him to a herbicide and refusing his request for medical treatment. Defendant Nebraska, Kansas & Colorado Railway (NK&C) (filing 12), and defendants Omnitrax Holdings and Omnitrax together (filing 10), filed separate motions to dismiss the plaintiff's whistleblower claims for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and to dismiss all claims for the plaintiff's failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). The defendants' motions will be denied.

I. STANDARD OF REVIEW

  A motion pursuant to Rule 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction

bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack'" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). A facial attack concerns a failure to allege sufficient facts to support subject matter jurisdiction, whereas a factual attack concerns the veracity of the pled facts supporting subject matter jurisdiction. *See Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018). In a facial attack, the Court merely needs to look and see if the plaintiffs have sufficiently alleged a basis for subject matter jurisdiction, and accepts all factual allegations in the pleadings as true and views them in the light most favorable to the nonmoving party. *Branson Label,* 793 F.3d at 914. In a factual attack, subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings are considered. *Id.* at 914-15.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For the purposes of a motion to dismiss a court must take all the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679. The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *Twombly*, 550 U.S. at 554. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## II. BACKGROUND

The allegations in the plaintiff's complaint identify defendant NK&C as a railroad carrier controlled by defendant Omnitrax Holdings, Combined Inc., and operates transporting wheat, corn, coal, and fertilizer. Defendant Omnitrax, Inc. provides rail transportation services across the nation. Filing 1 at 2. The plaintiff is a resident of Ogallala, Nebraska, and was employed by the defendants, primarily as a conductor, from around August 16, 2018, until his employment was terminated on November 18, 2019. Filing 1 at 2-3, 6.

The plaintiff alleges that in April or May 2019, he and Engineer Jon Mack were preparing to operate a locomotive when Mack received a call from the mechanical engineering manager, Kelly Smith, who directed Mack to take certain actions with the locomotive's throttle and generator field. Filing 1 at 3. Mack and the plaintiff discussed Smith's order, and believed that doing as Smith directed would violate the law and constitute a "red zone" safety violation. They refused to do what Smith directed them to do. When the plaintiff and Mack arrived at the jobsite, Smith was waiting for them. Smith again instructed Mack and the plaintiff to take actions they believed were illegal and a safety violation. They, again, refused to comply with Smith's instruction. The plaintiff then completed a job briefing form, detailing Smith's

3

instructions, and that he and Mack could not comply with Smith's instructions because doing so would be illegal and a safety violation. Both the plaintiff and Mack signed the job briefing form. Id.

The next day, as the plaintiff and Mack were preparing for their shift, Trainmaster Amy Bolt told them to go to General Manager Bryce Anderson's office. Waiting for them when they arrived were Anderson, Smith, Bolt, and Roadmaster Jason Michaels. Id. The plaintiff alleges that Anderson accused him of "throwing a manager under the bus," and told him that reporting his safety concerns was not wise. Filing 1 at 4. Anderson told the plaintiff and Mack that if they pushed the safety issue any further, they would be terminated and never work for a railroad again. Anderson then sent the plaintiff and Mack home for the day. Id. Around May 8, 2019, the plaintiff contacted the Occupational Safety and Health Administration (OSHA), to report Anderson's threat to retaliate against him for reporting his safety concerns.

In early June 2019, the plaintiff became concerned about the condition of some railroad tracks, and reported his concern to his superior in a telephone call. The plaintiff reached his maximum hours of service prior to finishing his route that day, and as such, he was unable to complete a written report about his concerns. Filing 1 at 4. On June 12, Anderson suspended the plaintiff for not turning in a written report regarding his concerns about the railroad tracks.

On August 7, 2019, a herbicide was sprayed on weeds around the railroad tracks, but the defendants did not inform its employees that weeds had been sprayed. The plaintiff came in contact with the sprayed weeds that same day, and experienced a reaction that caused a burning sensation on both arms. Id. The plaintiff contacted his supervisor and requested permission to go

4

home, change his clothes, and seek treatment from a nearby physician for his symptoms. Filing 1 at 4-5. The supervisor denied the plaintiff's request, which forced him to work for ten hours in contaminated clothing. Filing 1 at 5. When the plaintiff was able to seek treatment, he was diagnosed with dermatitis and prescribed medication. Anderson refused to consider the plaintiff's dermatitis a work-related injury, and would not fill out an accident report. Also, an Omnitrax corporate officer responsible for work-related injury claims repeatedly refused to pay for the plaintiff's prescribed medication. *Id.*

The plaintiff alleges that he was suspended on August 8, 2019, for allegedly leaving a switch lock unlocked. Anderson did not provide the plaintiff with union representation during his suspension meeting, and forced the plaintiff to sign suspension paperwork. *Id.* On August 28, the plaintiff was suspended for unauthorized employment—a violation of the defendants' rule that "employees must not engage in another business or occupation that would create a conflict of interest with their employment on the railroad or would interfere with their availability for service or the proper performance of their duties." Filing 1 at 5-6. The plaintiff did own and operate his own business, but alleges that his business did not compete with the defendants, inhibit his availability, or inhibit his ability to perform his job duties. Filing 1 at 6.

After his unauthorized work suspension, Anderson told the plaintiff he could resign and Anderson would make everything go away, or he could have a hearing on the unauthorized employment charge, in which case he would be terminated from employment and Anderson would ensure that he never worked for another railroad, and he would be ineligible for unemployment insurance benefits. The plaintiff chose to have a hearing, which was held on October 24, 2019. After the hearing was over, the hearing officer told the plaintiff and his union representative that he did not believe that the plaintiff

5

committed a rule violation with his outside business. However, on November 18, Anderson terminated the plaintiff's employment with the defendants for his unauthorized employment rule violation, and in December, Omnitrax required the plaintiff to remove his savings from his company 401(k) account.

On May 21, 2020, no final decision had been issued regarding the plaintiff's May 8, 2019, retaliation claim. The plaintiff then filed his complaint that is now before this Court.

### III. DISCUSSION

The plaintiff alleges that the defendants violated FRSA when Anderson retaliated and subjected him to adverse employment actions for reporting safety concerns, and for requesting medical aide. Filing 1 at 7-8. Further, the plaintiff alleges that the defendants violated FRSA by denying and interfering with medical treatment for the injury he suffered in the course of his employment. Filing 1 at 8. The defendants seek dismissal of the plaintiff's first, second, and third claims pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. Further, the defendants argue for dismissal asserting that the plaintiff's complaint fails to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). The grounds, however, defendant NK&C argues for dismissal of the plaintiff's FRSA claims differ from the grounds the Omnitrax defendants argue. Filing 11 at 2-4; filing 13 at 3-6.

### 1. NK&C's Arguments for dismissal of the Plaintiff's FRSA Claims
#### 1.a. NK&C's Subject Matter Jurisdiction Argument

Defendant NK&C argues that the plaintiff failed to exhaust all administrative remedies, which results in this Court lacking subject matter jurisdiction over his FRSA claims. FRSA provides that an interstate railroad

carrier, or one of its officers and employees, "shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for reporting in good faith, a hazardous safety or security condition [or for] refusing to work when confronted by a hazardous safety or security condition." 49 U.S.C. § 20109(b)(1)(A) & (B).

To enforce FRSA's whistleblower protections, an affected employee may seek relief "by filing a complaint with the Secretary of Labor." 49 U.S.C. § 20109(d)(1). The complaint must be filed not later than 180 days after the date on which the alleged violation occurred. 49 U.S.C. § 20109(d)(2)(A)(ii). If the Secretary of Labor does not issue a final decision within 210 days after the filing of the complaint, and the delay is not due to the employee's bad faith, FRSA provides a "kick-out" option, allowing the employee to file an original action at law or equity for de novo review in the appropriate federal district court "which shall have jurisdiction over such an action without regard to the amount in controversy." 49 U.S.C. § 20109(d)(3). See also, *Gunderson v. BNSF Railway Co.*, 850 F.3d 962, 967 (8th Cir. 2017). On the other hand, if the Secretary of Labor issues a final decision, the employee may obtain review of the Secretary's final order by filing a petition for review with the United States Court of Appeals. 49 U.S.C. § 20109(d)(4).

Although it is not entirely clear, defendant NK&C appears to argue that the plaintiff was required to see his administrative claim through to a final decision by the Secretary, or at least not exercise the "kick-out" option when he did. Because the plaintiff kicked his administrative claim out before the administrative process was completed, the plaintiff, according to NK&C, failed to "adhere to the mandatory process set forth in the enabling regulations and the specific directives of the DOL." Filing 13 at 4.

7

NK&C contends that its subject matter jurisdiction challenge is a factual challenge, and has filed several exhibits, four of which are Department of Labor letters NK&C received regarding the plaintiff's administrative claims. Filings 13-1 to 13-4. Three of the letters are notices that the plaintiff filed administrative claims. Filing 13-1; filing 13-2; filing 13-3. The fourth letter is NK&C's notice of the Secretary's findings, and includes a copy of the notice provided to the plaintiff. Filing 13-4. The notice acknowledges that the plaintiff requested that OSHA terminate its investigation, and further reported that based on the information gathered so far, the Secretary was unable to conclude that there is reasonable cause to believe a violation of the statute occurred. The notice also advised the plaintiff that he had thirty days to file objections and request a hearing, and if no objections were filed, the Secretary's findings would become final. Filing 13-4. The complaint now before this Court was filed before the thirty days had elapsed, and before the Secretary's findings became final.

First, the Court finds that NK&C's claim of a factual challenge to this Court's subject matter jurisdiction is not well-taken. NK&C's exhibits, as well as the other exhibits filed by NK&C in support of its purported factual challenge, do not contradict or conflict with the allegations in the plaintiff's complaint pertinent to this Court's subject matter jurisdiction.

Further, NK&C's argument that the plaintiff failed to follow a "mandatory process set forth in the enabling regulations" cannot be reconciled with the relevant statutory text addressing this Court's jurisdiction. That statutory text is very clear: if the Secretary had not issued a final decision after 210 days, and the delay is not due to the complainant's bad faith, a complainant may abandon agency proceedings and file a district court action, "*which shall*

8

*have jurisdiction over such an action* without regard to the amount in controversy." 49 U.S.C. § 20109(d)(3); *Gunderson*, 850 F.3d at 971.

Here, the plaintiff alleged, and NK&C acknowledged, that more than 210 days had elapsed since the plaintiff filed his administrative claim. Filing 1 at 2; filing 13 at 3-4. The plaintiff alleged, and NK&C does not dispute, that as of the date the plaintiff's federal district court complaint was filed, the Secretary of Labor had not issued a final decision regarding the plaintiff's administrative claim. Filing 1 at 2; filing 13 at 4. Nothing in the plaintiff's complaint, or in NK&C's exhibits, suggests that the plaintiff has acted in bad faith. Thus, whether viewed as a factual challenge, or as a facial challenge, nothing in this record supports NK&C's subject matter jurisdiction challenge.

Defendant NK&C's argument that the plaintiff did not exhaust his administrative remedy is contrary to law. FRSA expressly requires pursuit of an administrative remedy before allowing a sequential *de novo* federal district court review. *Gunderson*, 850 F.3d at 971. That is exactly what the plaintiff alleged he did. The plaintiff's complaint alleged facts showing that he filed his initial complaints with the Secretary of Labor (OSHA). After 210 days, the Secretary of Labor had not issued a final order. Absent the plaintiff's bad faith, he could, and did, properly exercise his statutory "kick-out" rights, giving this Court subject matter jurisdiction over his FRSA retaliation claims. The Court finds that the plaintiff alleged facts to support subject matter jurisdiction regarding his FRSA claim as to NK&C.

1.B. NK&C'S 12(B)(6) DISMISSAL ARGUMENT.

NK&C argues that the plaintiff's complaint fails to state a claim for relief based on the doctrines of res judicata and collateral estoppel. Res judicata, or

9

claim preclusion, bars relitigation of a claim if: (1) a prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was final and on the merits; and (3) the same cause of action and parties (or their privies) were involved in both actions. *Cardona v. Holder,* 754 F.3d 528, 530 (8th Cir. 2014). Collateral estoppel, or issue preclusion, requires that the issue in a prior action be identical to the decisive issue in the current action, and that the party against whom collateral estoppel is being invoked had a full and fair opportunity to litigate the issue in the prior action. *Lincoln Benefit Life v. Wilson,* 907 F.3d 1068, 1075 (8th Cir. 2018).

NK&C argues that the plaintiff's complaint seeks to challenge the discipline he received for failing to file a timely safety and hazard report, leaving a switch unlocked, and engaging in unauthorized employment.[1] Filing 13 at 8. The Court disagrees.

First, even assuming the plaintiff's FRSA claims challenge his previous rule violation determinations, the plaintiff alleges facts showing he did not have a full and fair opportunity to litigate the rule violation accusations. The plaintiff alleges that he was not provided with union representation at his suspension hearing regarding the unlocked switch, and was forced to sign the suspension paperwork. Filing 1 at 5. Also, the plaintiff alleges that after the unauthorized employment hearing, the hearing officer told the plaintiff and his union representative that he did not believe the plaintiff committed a rule

---

[1] NK&C supports its argument by alleging facts that are nowhere to be found in the complaint. Those facts have not been considered or credited by the Court. However, consistent with NK&C's supplemental facts, the plaintiff's complaint acknowledges that he was cited and disciplined for allegedly failing to make a timely safety and hazard report, as well as allegedly failing to lock a switch and engaging in unauthorized employment. Filing 1 at 4-5.

violation, but Anderson still terminated the plaintiff's employment. Filing 1 at 6.

Further, the Court is unable to conclude that there is an identity of claims or issues between the plaintiff's workplace rules violation hearings and the adjudication of his FRSA retaliation claims in this Court. To prevail on his FRSA retaliation claims, the plaintiff must prove: (1) that he engaged in protected activity; (2) NK&C knew or suspected, actually or constructively, that he had engaged in protected activity; (3) the plaintiff suffered an adverse action; and (4) the circumstances raise an inference that the protected activity was a contributing factor in the adverse action. *Gunderson*, 850 F.3d at 968. If the plaintiff is successful, the defendant may avoid liability if it demonstrates by clear and convincing evidence that it would have taken the same unfavorable action in the absence of the plaintiff's protected activity. *BNSF Ry. Co. v. United States Dep't. of Labor,* 867 F.3d 942, 945 (8th Cir. 2017); 49 U.S.C. § 42121(b)(2)(B)(ii). Here, the plaintiff alleges that the purported rule violations that resulted in his discipline were pretextual. The critical inquiry in a pretext analysis is whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge. *BNSF,* 867 F.3d 947.

The plaintiff's FRSA claims concern whether the circumstances surrounding the alleged workplace rule violations and the discipline imposed raise an inference that such was pretextual, or that the plaintiff's reporting of safety concerns, as well as his injury, were contributing factors in the adverse actions imposed. There is nothing in the plaintiff's complaint—or for that matter, NK&C's supplemental facts—that would allow this Court to find that the elements of a FRSA claim, or the defendants' subjective motivation or good faith, were claims or issues finally decided in the prior employee rule violation

11

hearings. Accordingly, the doctrines of res judicata and collateral estoppel are not implicated.

## 2. OMNITRAX'S ARGUMENTS FOR DISMISSAL OF THE PLAINTIFF'S FRSA CLAIMS
### 2.A. OMNITRAX'S SUBJECT MATTER JURISDICTION ARGUMENT

The Omnitrax defendants allege that the plaintiff never filed an administrative claim that specifically named either of the Omnitrax defendants. This alleged omission, the Omnitrax defendants argue, constitutes the plaintiff's failure to exhaust his administrative remedy with respect to claims against them. Filing 11 at 2-4. Further, the Omnitrax defendants argue that the plaintiff's alleged failure to exhaust his administrative remedies deprives this Court of subject matter jurisdiction, and as such, the plaintiff's FRSA claims as to both Omnitrax defendants must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Generally, the timely filing of an administrative complaint is not a jurisdictional prerequisite to suit in federal court, but is a requirement, like a statute of limitation, subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (Title VII claim); *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 154 (2013) (Medicare reimbursement claim); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 438 (2011) (Veterans Court claim); *Union Pacific R. Co. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67, 81-82 (2009) (NRAB grievance adjudications).

An administrative rule that does not govern a court's adjudicative capacity—in other words, a court's subject matter or personal jurisdiction—should not be referred to as jurisdictional. *Henderson*, 562 U.S. at 435.

Administrative rules, even if important and mandatory, that do not reference a court's adjudicative capacity are more aptly thought of as "claims-processing rules." *Id.*; *Boechler, P.C. v. Comm'r of Internal Revenue,* No. 19-2003, 2020 WL 4248469, at *1 (8th Cir. Jul. 24, 2020). "These are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson,* 562 U.S. at 435.

Here, the rules concerning the initiation of a FRSA whistleblower claim do not condition this Court's adjudicative capacity on the timely filing of the initial complaint. 42 U.S.C. § 20109(d)(1) provides:

> **In general**.—An employee who alleges discharge, discipline, or other discrimination in violation of subsection (a), (b), or (c) of this section, may seek relief in accordance with the provisions of this section, with any petition or other request for relief under this section to be initiated by filing a complaint with the Secretary of Labor.

The rules governing the procedure for initiating a complaint include a statute of limitation for the filing of a complaint, but without any kind of jurisdictional reference.

> **Statute of limitations.**—An action under paragraph (1) shall be commenced not later than 180 days after the date on which the alleged violation of subsection (a), (b), or (c) of this section occurs.

42 U.S.C. § 20109(d)(2)(A)(ii).

This provision, like most statute of limitation provisions, is subject to waiver, estoppel, and equitable tolling, and is consistent with claim-processing rules—rules intended to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times. *Henderson,* 562 U.S. at 435.

It is, however, important to note that although the timely filing of an initial complaint with the Secretary of Labor does not implicate this Court's adjudicatory capacity, as discussed with respect to NK&C's subject matter jurisdiction argument, § 20901(d)(3) does implicate when this Court's jurisdiction may "kick-in." Once a complaint has been filed, the Secretary of Labor has 210 days to issue a final order or the complainant, in the absence of his bad faith, may "kick-out" the complaint and "bring an original action at law or equity for de novo review in the appropriate district court of the United State, *which shall have jurisdiction over such an action* without regard to the amount in controversy." 42 U.S.C. § 20109(d)(3).

Statutory time limits are jurisdictional only when Congress clearly states that they are. *Boechler, supra.* Here, Congress did not clearly state that this Court's jurisdiction is limited to timely filed initial complaints, but instead, circumscribed federal district court jurisdiction until the Secretary of Labor has had at least 210 days to issue a final order. Then, in the absence of bad faith, the complainant may exercise the option to kick the complaint out by filing an action in the appropriate federal district court.

The Court finds that even if the plaintiff, as Omnitrax asserts, "NEVER filed an administrative complaint" (filing 11 at 3) against the Omnitrax defendants, that fact does not implicate this Court's subject matter jurisdiction. The timely filing of the initial complaint with the Secretary of

14

Labor is a claims-processing requirement subject to several defenses such as waiver, estoppel, or equitable tolling, or, as the plaintiff argues here, that the Omnitrax defendants and NK&C share a substantial identity. Filing 22 at 1. The Omnitrax defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is without support in the law.

### 2.B. OMNITRAX'S RULE 12(B)(6) DISMISSAL ARGUMENT.

The Omnitrax defendants argue and assert that FRSA protects only employees from the actions of their employers, and that the plaintiff was never "employed" by the Omnitrax defendant. Additionally, the Omnitrax defendants assert that the plaintiff's complaint alleging that he was employed by all defendants is merely a legal conclusion, insufficient to satisfy the requirements to state a claim for relief. Filing 11 at 5. Actually, the plaintiff did more than just lump the Omnitrax defendants in with NK&C under the general label of "defendants." The plaintiff identified that Omnitrax was responsible for denying payment of the plaintiff's medication prescribed to treat his herbicide-induced dermatitis, and that Omnitrax required the plaintiff to remove his saving from his employee 401(k) account. Filing 1 at 5-6. Both of these actions are the kind of actions an employer or the employer's authorized agent may take with respect to an employer's employee.

FRSA speaks to the conduct of railroad carriers, and precludes "railroad carriers engaged in interstate or foreign commerce, a contractor or a subcontractor of such a railroad carrier, or an officer or employee of such railroad carrier" from discharging, demoting, suspending or reprimanding an employee for, in good faith, reporting rule, regulation, or law violations. 49 U.S.C. § 20109(a)(1). "Rail carriers means any person providing common

15

carrier railroad transportation for compensation." 49 U.S.C. § 10102(5). The plaintiff alleges that Omnitrax Holdings controls the operation of NK&C's interstate transportation of agricultural products, and that Omnitrax, Inc. provides rail transportation services across the nation. Those allegations are not merely conclusory labels, and at a minimum, are sufficient to raise a reasonable expectation that discovery will reveal evidence to substantiate the plaintiff's claim that the Omnitrax defendants fit the definition of a railroad carrier, and may be liable to the plaintiff for his damages. *See Twombly*, 550 U.S. at 545.

### 3. THE PLAINTIFF'S FELA CLAIM.

The Omnitrax defendants and NK&C assert that the plaintiff's complaint "fails to allege a duty owed to Plaintiff" and "fails to allege a breach" regarding the injury he sustained due to herbicide exposure. Filing 11 at 6; filing 13 at 11. The Court finds the defendants' assertions to be without merit.

The plaintiff alleged in his complaint that the defendants sprayed an industrial herbicide on weeds surrounding its railroad tracks, and did not inform its employees that weeds had been sprayed. That same day, the plaintiff came in contact with the herbicide and suffered a reaction that was later diagnosed as dermatitis. The plaintiff requested, but was denied, leave to go home and change out of his herbicide-contaminated clothing, which resulted in the plaintiff working for ten hours in contaminated clothing. The plaintiff alleges that he eventually received medical treatment, and was prescribed medication to treat his dermatitis. The defendants, however, refused to consider the plaintiff's dermatitis condition as a work-related injury, and refused to pay for the plaintiff's prescription medication. Filing 1 at 4-5. FELA imposes upon employers a continuous duty to provide a safe place to work.

*Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889 (8th Cir. 2012). This duty is non-delegable, and increases as the risk to the employee increases. *Francisco v. Burlington N. R.R. Co.,* 204 F.3d 787, 789 (8th Cir. 2000). The railroad's conduct is measured by the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances, and what would be anticipated as a result of a particular condition. *Ackley v. Chicago and North Western Transp. Co.,* 820 F.2d 263, 267 (8th Cir. 1987).

The allegation that the defendants sprayed an industrial herbicide around the railroad tracks implicates the railroad's duty to provide a safe place for the plaintiff to work. Failing to warn the plaintiff, and all other railroad workers, of the condition it created by spraying the herbicide implicates a breach of the railroad's duty. Further, the plaintiff sufficiently alleged that the railroad's conduct in failing to warn about the herbicide application, and then refusing to allow the plaintiff to change out of his contaminated clothing, implicates whether the defendants exercised the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances, and what would be anticipated as a result of a toxic chemical exposure. The defendants' motion to dismiss the plaintiff's FELA claim is not well-taken at this stage of the proceedings.

IT IS ORDERED:

1. The Omnitrax defendants' motion to dismiss (filing 10) is denied.

2. Defendant NK&C Railway's motion to dismiss (filing 12) is denied.

3. The plaintiff's motion to strike (filing 19) is denied as moot.

4. This matter is referred to the Magistrate Judge for case progression.

Dated this 19th day of August, 2020.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
Chief United States District Judge